**Electronically Filed**
**Intermediate Court of Appeals**
**29390**
**12-NOV-2010**
**09:38 AM**

NO. 29390

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
LESS ALLEN SCHNABEL, JR., Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 07-1-0863)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth, Ginoza, JJ.)

Defendant-Appellant Less Allen Schnabel, Jr. (Schnabel) appeals from the Judgment of Conviction and Sentence entered on September 10, 2008 by the Circuit Court of the First Circuit (Circuit Court).[1]  After a jury trial, Schnabel was convicted of Manslaughter under Hawaii Revised Statutes (HRS) § 707-702 (2009 Supp.).  The case arises from an incident on April 22, 2007 at Zablan Beach Park where Schnabel punched Christopher Reuther (Reuther) and Reuther subsequently died.

Schnabel raises the following points of error on appeal: (1) the Circuit Court erred in ruling that evidence in a juvenile proceeding involving Schnabel would be admissible to impeach Schnabel if he testified that he did not know that one punch could cause death; (2) he had ineffective assistance of

---

[1] The Honorable Michael A. Town presided.

counsel because his trial counsel failed to subpoena the physician who attended Reuther prior to his death and who signed the death certificate; (3) the deputy prosecuting attorney engaged in misconduct during closing argument; (4) there was insufficient evidence to support Schnabel's conviction because his use of force was in self-defense; and (5) there was insufficient evidence that he recklessly caused Reuther's death.

Based on our careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we affirm the judgment of conviction.

I.   Use of Evidence From Juvenile Proceedings for Impeachment
     Purposes

During proceedings below, the State of Hawai'i (State) notified the defense that it intended to utilize evidence from a Family Court juvenile proceeding involving Schnabel and the adjudication in the juvenile case.  The State indicated it intended to show, pursuant to Rule 404(b) of the Hawaii Rules of Evidence (HRE), that Schnabel was present at the juvenile proceedings during the testimony of Dr. Jorge Camara, and therefore had knowledge of Dr. Camara's testimony that, the injuries to the victim in that case created a "substantial risk of death."  According to Dr. Camara's testimony in the juvenile proceeding, the incident there had involved punches and kicks to the victim resulting in a fracture of one of the victim's eye sockets, and the severity of the injury created a substantial risk of death because it could have led to a brain hemorrhage or subdural hematoma.

The defense filed a motion in limine to preclude the State's use of the proffered evidence from the juvenile proceeding.  The Circuit Court initially ruled that the State would not be allowed to introduce evidence of the prior juvenile

incident. The Circuit Court stated that "[t]he only option would be you'd have to approach the court. I have to hear what Mr. Schnabel had to say, if anything, and then measure it at that point, but basically it's not coming in at all." During further proceedings and in addressing the State's request for reconsideration and clarification of the Circuit Court's ruling, the Circuit Court ultimately ruled that if Schnabel testified that he did not know one punch could cause death, that he would open the door and the State would have the opportunity to bring in evidence regarding Dr. Camara's testimony. The Circuit Court's ruling would not have allowed the State to point out the adjudication in the prior juvenile proceeding. However, if Schnabel testified he did not know a punch could cause death, the State could seek to impeach him by showing that he had been present for Dr. Camara's testimony in the juvenile proceeding.

At trial, Schnabel did not testify. The defense asserted that one factor for Schnabel's decision not to testify was the Circuit Court's ruling on the motion in limine.

Schnabel argues on appeal that because the incident in the juvenile proceeding involved multiple punches and kicks, it was factually dissimilar to this case which involved one punch and thus the evidence from that case was not relevant under HRE Rule 401. Schnabel further argues that because the evidence from the juvenile proceeding was irrelevant, any testimony from him about not knowing one punch could cause death should not open the door to cross-examination of him about the juvenile proceedings. Because he chose not to testify, Schnabel contends the Circuit Court's ruling on the motion in limine was not harmless error. We disagree with Schnabel as to each point.

We review the Circuit Court's ruling under the following standards of review:

3

> "Prior bad act" evidence under Hawaiʻi Rules of Evidence (HRE) Rule 404(b) (1993) is admissible when "it is 1) relevant and 2) more probative than prejudicial." *State v. Maelega*, 80 Hawaiʻi 172, 183, 907 P.2d 758, 769 (1995). A trial court's determination that evidence is "relevant" within the meaning of HRE Rule 401 (1993) is reviewed under the right/wrong standard of review. *State v. Pulse*, 83 Hawaiʻi 229, 247, 925 P.2d 797, 815 (1996). However, a trial court's balancing of the probative value of prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 (1993) is reviewed for abuse of discretion. *See id.* An abuse of discretion occurs when the court "clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant." *State v. Furutani*, 76 Hawaiʻi 172, 179, 873 P.2d 51, 58 (1994).

State v. Cordeiro, 99 Hawaiʻi 390, 404, 56 P.3d 692, 706 (2002) (internal parentheticals omitted) (quoting State v. Torres, 85 Hawaiʻi 417, 421, 945 P.2d 849, 853 (App. 1997)). Moreover, the scope of cross-examination is within the sound discretion of the trial court. State v. Jackson, 81 Hawaiʻi 39, 47, 912 P.2d 71, 79 (1996).

We first determine that, if Schnabel had testified that he did not know that one punch could cause death, the evidence of Dr. Camara's testimony from the juvenile proceeding would have been relevant. Even though the incident in the juvenile proceeding did not involve a single punch, it was evidence having a tendency to make Schnabel's proffered assertion that he did not know a single punch could cause death "more probable or less probable than it would be without the evidence." HRE Rule 401. The Circuit Court was thus correct as to the relevance of the evidence. We further conclude that admitting Dr. Camara's testimony under such circumstances would be more probative than prejudicial, and thus the Circuit Court did not abuse its discretion in this regard. We note the Circuit Court indicated its intent, in the event Dr. Camara's testimony was to be admitted, to provide limiting instructions and to not allow the

State to point out Schnabel's adjudication in the juvenile proceedings.

We also conclude that, if Schnabel had testified as indicated, he would have opened the door to cross-examination about what he learned in the juvenile proceedings from Dr. Camara's testimony. "[T]he proper scope of cross-examination includes full development of matters broached on direct examination, including facts reasonably related to matters touched on direct." State v. McElroy, 105 Hawaiʻi 352, 356, 97 P.3d 1004, 1008 (2004) (emphasis deleted) (quoting State v. Napulou, 85 Hawaiʻi 49, 57, 936 P.2d 1297, 1305 (App. 1997)). The Circuit Court did not abuse its discretion as to the proper scope of cross-examination.

Because the Circuit Court did not err in its ruling on Schnabel's motion in limine regarding the juvenile proceedings, there was no infringement of Schnabel's right to testify.

II.   Lack of Subpoena of Attending Physician

Schnabel asserts that he received ineffective assistance of trial counsel because his counsel should have subpoenaed the physician who attended Reuther prior to his death and who signed the death certificate. Schnabel contends this physician listed the cause of death as a ruptured aneurysm and did not refer the matter to the medical examiner as would have been the case if there was a suspicion that a trauma or foul play could have been the cause of death. Based on these assertions, Schnabel argues that this physician would have contradicted the findings of medical examiner Kanthi DeAlwis, who testified that the cause of Reuther's death was "[t]raumatic subarachnoid hemorrhage due to . . . [an] assaultive blunt force injury to the head."

5

As the State correctly points out, "[i]neffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (citation omitted). Because there is no affidavit or sworn statement in the record as to the substance of what the physician would have testified if called, we are left to speculate whether the physician would have testified as Schnabel asserts and what impact, if any, there was from not calling this witness. We conclude that Schnabel has failed to meet his burden of showing that the failure to subpoena the physician constituted ineffective assistance of counsel. See State v. Reed, 77 Hawai'i 72, 84, 881 P.2d 1218, 1230 (1994), *overruled on other grounds by*, State v. Balanza, 93 Hawai'i 279, 1 P.3d 281 (2000); see also State v. Fukusaku, 85 Hawai'i 462, 481, 946 P.2d 32, 51 (1997).

III. Alleged Conduct of the Deputy Prosecuting Attorney

Schnabel contends that on two occasions during closing argument, the deputy prosecuting attorney (DPA) engaged in misconduct. First, Schnabel argues the DPA presented a powerpoint slide to the jury appealing to their emotions, which stated: "Is there a substantial and unjustifiable risk of death from one punch? . . . Ask Chris if it's substantial and unjustified. He's dead!" Second, Schnabel points to statements by the DPA urging the jurors to decide from their "gut" whether Schnabel was guilty, allegedly at the expense of following the legal standards provided by the jury instructions. On each occasion, defense counsel objected and the Circuit Court overruled the objection.

We review these issues under the following standard:

> Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction; factors considered are: (1) the nature of the conduct, (2) the promptness of a curative instruction, and (3) the strength or weakness of the evidence against the defendant.

State v. Maluia, 107 Hawai'i 20, 24, 108 P.3d 974, 978 (2005).

With regard to the powerpoint slide, the DPA at trial argued that the slide was offered because the fact that someone died was "arguably substantial enough to show that the risk did exist and it was significant." The Circuit Court allowed the slide, reasoning that it had already instructed the jury that pity, passion or prejudice should not influence their decision.[2]

Although the prosecution should not engage in argument calculated to inflame the passions or prejudices of the jury, see State v. Sanchez, 82 Hawai'i 517, 533, 923 P.2d 934, 950 (App. 1996), the DPA had some leeway during closing argument to draw reasonable inferences from the record.

> With regard to the prosecution's closing argument, a prosecutor is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence. It is also within the bounds of legitimate argument for prosecutors to state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence. In other words, closing argument affords the prosecution (as well as the defense) the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom.

---

[2] The instruction to the jury stated, in relevant part:

> You must not be influenced by pity for the defendant or by passion or prejudice against the defendant. Both the prosecution and the defendant have a right to demand, and they do demand and expect, that you will conscientiously and dispassionately consider and weigh all of the evidence and follow these instructions, and that you will reach a just verdict.

State v. Rogan, 91 Hawai'i 405, 412-13, 984 P.2d 1231, 1238-39 (1999) (citations and quotation marks omitted). While the powerpoint slide in question had an unnecessary sarcastic tone, it did not reach the level of improper conduct. It was based on evidence in the record that Reuther had died, and it dealt with an important issue in the case, whether there was substantial and unjustifiable risk of death from one punch. Moreover, unlike in Sanchez, the DPA's statements did not seek to inject issues broader than Schnabel's guilt or innocence.

With regard to the DPA's statements that the jurors should rely on their "gut feeling", the statements were made in the context of telling the jurors to "read these instructions but use your common sense." That statement alone would not cause concern. We do, though, have a concern about the DPA saying "[d]on't get too caught up in the mumbo jumbo of all the words but use your common sense." However, upon objection from defense counsel, the Circuit Court stated it would allow the argument as an illustration and that "the jury has the instructions." Moreover, after a further objection and a bench conference, the Circuit Court immediately gave a curative instruction.[3] Given these circumstances, in particular the immediate curative instruction from the Circuit Court, as well as the strength of the evidence against Schnabel, we conclude that the statements of the DPA were harmless beyond a reasonable doubt.

---

[3] The Circuit Court instructed the jury as follows:

> Ladies and gentlemen of the jury, I give the attorneys some latitude at closing. The instructions you have as to what reasonable doubt is and isn't and that pity, passion and prejudice have no play, I'll allow you to argue that basically as an illustration of your take on common sense. There's no definition of reason and common sense so I'll give you a little bit of latitude over objection. Thank you.

IV.  Self-Defense

Schnabel argues that he used justifiable force, a single punch, in self-protection and that the state failed to prove facts to negative this defense.  Given the record and the evidence, we disagree.

For purposes of the defense of self-protection under HRS § 703-304 (1993 Repl. & Supp. 2009), the following standards apply:

> Since self-protection is not designated as an affirmative defense by the Hawai'i Penal Code or any other statute, a defendant who comes forward with some credible evidence of facts constituting the defense is, pursuant to HRS § 701-115(2)(a) (1985), "entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]" Moreover, once the issue of self-protection is raised, the burden is on the prosecution to disprove the facts that have been introduced or to prove facts negativing the defense and to do so beyond a reasonable doubt. *State v. McNulty*, 60 Haw. 259, 262, 588 P.2d 438, 442 (1978); *State v. Straub*, 9 Haw.App. 435, 444, 843 P.2d 1389, 1393 (1993).

State v. Lubong, 77 Hawai'i 429, 431, 886 P.2d 766, 768 (App. 1994).  Moreover, to assess the sufficiency of the evidence, we consider the following:

> In reviewing the legal sufficiency of the evidence on appeal, however, the test is whether, viewing the evidence in the light most favorable to the State, substantial evidence exists to support the conclusion of the trier of fact. *State v. Silva*, 75 Haw. 419, 432, 864 P.2d 583, 589-90 (1993). "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion. *Id.* In reviewing whether substantial evidence exists to support a conviction, moreover, due deference must be given to the right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced. *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

Lubong, 77 Hawai'i at 432, 886 P.2d at 769.

Schnabel relies on the testimony of Kristie Reverio (Reverio) for his claim of self-defense.  Reverio testified that the incident at Zablan Beach Park occurred when Reuther took

pictures toward the area where Reverio and Schnabel were standing. According to Reverio, Schnabel confronted Reuther, they exchanged words and Reuther put down his camera bag and moved toward Schnabel in a fighting stance. Schnabel argues that given this scenario his use of force, one punch, was reasonable. We need not address the reasonableness of Schnabel's conduct in the light of Reverio's testimony, because this issue is determined by the testimony of other witnesses who had a very different account of the events leading to Schnabel striking Reuther. The testimony of other witnesses, including Harold Kaeo (Kaeo), Kuikahi Enos (Enos), and Nicole Ako (Ako), provided substantial evidence for the jury to reject Reverio's version of events and to support a determination by the jury that Reuther was not the aggressor in the incident. To the contrary, the testimony of Kaeo, Enos and Ako -- even though not aligned as to all the details -- provided substantial evidence for the jury to conclude that Reuther was standing by his car when Schnabel approached him and without warning punched Reuther in the head.

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (internal quotation marks, citation, and brackets omitted). Given the evidence adduced at trial, there was substantial evidence to disprove Reverio's account of the events and to support the jury's rejection of Schnabel's claim of self-defense.

V. Sufficiency of the Evidence that Schnabel Recklessly Caused Reuther's Death

The final point of error raised by Schnabel is that there was insufficient evidence that he recklessly caused Reuther's death from one punch. In order to establish

recklessness, the prosecution had the burden of proving that Schnabel consciously disregarded a substantial and unjustifiable risk that his conduct would cause Reuther's death.  As the State correctly points out, the Hawai'i Supreme Court has held that:

> it is not necessary for the prosecution to introduce direct evidence of a defendant's state of mind in order to prove that the defendant acted intentionally, knowingly or recklessly. Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient.  The mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.

State v. Eastman, 81 Hawai'i 131, 140-41, 913 P.2d 57, 66-67 (1996)(internal citations omitted).  See also State v. Batson, 73 Haw. 236, 831 P.2d 924 (1992); State v. Hernandez, 61 Haw. 475, 605 P.2d 75 (1980).

Based on the circumstantial evidence in this case and the reasonable inferences from the circumstances of Schnabel's conduct, we conclude that there was sufficient evidence that Schnabel acted recklessly in causing Reuther's death.  Although witness testimony differed in some respects, there was substantial evidence that Schnabel, who was bigger than Reuther, struck Reuther without warning in the head with a closed fist, and that the punch was of significant force.

According to the testimony of Kaeo, Schnabel had called out to Reuther to take Schnabel's picture and Kaeo was concerned that Reuther was somehow being set up.  According to Kaeo, after Reuther showed Schnabel the picture, Reuther walked over to his car and opened the trunk.  Schnabel approached, walked behind Reuther, and "went whack'em" in the face with a closed fist. Schnabel then grabbed a bag from the trunk and walked away. According to Kaeo, Schnabel was "a lot bigger" than Reuther.  The force of Schnabel's strike was such that Kaeo testified it caused Reuther to do "like one full half-circle, and then after he

11

caught himself a little, and then he took like maybe one, two, three steps, and then he just went fall back." Kaeo went over to check on Reuther, who was lying on the ground with his eyes wide open and his body was "shaking a little."

Ako, who testified she had walked to Zablan Beach Park with Schnabel, stated that Schnabel got agitated and upset when Reuther took a picture of them. She testified she and Schnabel were "tripping" because they did not know Reuther and did not expect someone to come up and take their picture. Schnabel swore at Reuther and told him, among other things, "Fuck, you betta leave." Reuther walked to his car and was putting his camera away, but because he appeared not to be leaving, Ako went up to him and told him he should leave. According to Ako, Schnabel then approached the car, told Reuther to "[g]et the fuck out of here," and hit Reuther in his face. Ako stated Reuther was closing the car trunk just before he got hit. Ako testified that after the punch by Schnabel, Reuther "put his hands up and he took three steps back, and he fell down." According to Ako, Reuther was gasping for air and he "stayed there until he went stop."

Enos testified that Reuther was standing next to his car when he got "whacked" by Schnabel. According to Enos, after getting punched, Reuther was "jumping around, and then . . . he just went fall down." After Reuther was hit, Enos saw Schnabel grab a bag from Reuther's car and run away.

The medical examiner, Dr. Kanthi DeAlwis testified Reuther had a bruise behind his left ear, consistent with a fist blow. Corresponding to the bruise behind the left ear, Reuther had a big area of bleeding in the tissues underneath. DeAlwis testified that the basilar artery had stretched and was torn, and "that spread all this blood covering the basal part of the brain, and we call this a traumatic subarachnoid hemorrhage[.]" She

12

further testified that the impact to cause the injury was "significant enough to have caused the artery to have stretched to a point to have that tear."

Given the record in this case, there was sufficient evidence for the jury to conclude that Schnabel, who was bigger than Reuther, unexpectedly and without warning punched Reuther in the head with a closed fist, and that the force of the strike was so severe that it either caused Reuther to partially spin or jump around and to take steps backwards before he fell and died. The evidence also shows that the force of the strike was strong enough to stretch and tear Reuther's basilar artery and cause the traumatic subarachnoid hemorrhage. On this record, under the standard of Eastman, there is sufficient evidence that Schnabel was reckless in causing Reuther's death.

VI. Conclusion

For the foregoing reasons, the Judgment of Conviction and Sentence entered on September 10, 2008 is affirmed.

DATED: Honolulu, Hawai'i, November 12, 2010.

On the briefs:

Emmanuel V. Tipon
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

_(signature)_
Presiding Judge

_(signature)_
Associate Judge

_(signature)_
Associate Judge

13